UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                                                          Case No. 10-33272
                                                                                Chapter 13
    Catherine M. Meyhoefer,
      f/k/a Catherine M. Bristol,
                        Debtor.

---

APPEARANCES:

| | |
|---|---|
| Phillips Lytle, LLP<br>Attorneys for American Tax Funding, LLC<br>4199 East Genesee Street<br>Syracuse, New York  13214 | Joshua P. Fleury, Esq. |
| Office of the Chapter 13 Standing Trustee,<br>Mark W. Swimelar<br>250 South Clinton Street<br>Suite 203<br>Syracuse, New York  13202 | Lynn Harper Wilson, Esq., Staff Attorney |
| Simonetta & Associates, P.C.<br>Attorneys for Catherine M. Meyhoefer<br>109 South Warren St., Suite 512<br>Syracuse, NY  13202 | Russell S. Simonetta, Esq. |

MARGARET CANGILOS-RUIZ, U.S. BANKRUPTCY JUDGE

### MEMORANDUM-DECISION AND ORDER SUSTAINING AMERICAN TAX FUNDING LLC'S OBJECTION TO CONFIRMATION OF DEBTOR'S PLAN

American Tax Funding, LLC ("Creditor") objects under Section 1325(a)(5)[1] to the proposed treatment of its secured claim in the chapter 13 plan proposed by Catherine M. Meyhoefer ("Debtor") that is before the court for confirmation. Creditor filed a secured proof of claim (14-1), secured against the Debtor's primary residence, in the amount of $12,280.02 plus 12% annual interest based upon real property tax liens that Creditor purchased from the City of Syracuse ("City"). The plan proposes to pay Creditor's secured claim within the 60 month term

---

[1] Unless otherwise noted, all sectional references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2011) ("Bankruptcy Code").

1

of the plan, but at a 6% interest rate. Because the court finds that Creditor holds a "tax claim" within the meaning of 11 U.S.C. § 511(a), Creditor is entitled to the 12% rate pursuant to applicable nonbankruptcy law and, accordingly, Creditor's objection to confirmation is sustained.

## PROCEDURAL BACKGROUND

Debtor filed for relief under chapter 13 of the Bankruptcy Code on December 30, 2010. Her schedules list her primary residence in Syracuse at 206 Hastings Place at a current value of $70,800.00. The Debtor claims a $50,000.00 homestead exemption in the property and on Schedule "D" lists Creditor as holding a tax lien in the amount of $14,056.52, which is the only secured debt against the property. The Debtor's plan proposes to pay the claim over the 60 months of the plan at 6% interest.

Prior to the filing, Creditor purchased several duly levied tax liens from the City pursuant to a Purchase and Sale Agreement dated August 2, 2006. These purchases are evidenced by two tax lien certificates dated August 2, 2006 and January 31, 2008, which were recorded, respectively, with the Onondaga County Clerk on December 8, 2006, updated on January 4, 2007, and on June 11, 2008, updated on June 12, 2008. Included in the aggregate listing were certain tax liens against the Debtor's residence. The certificates provide for the accrual of interest on the outstanding balances at the rate of 1% per month. Creditor relies upon its asserted status as the holder of a tax claim under Section 511 of the Bankruptcy Code and the application of nonbankruptcy law to support its receipt of 12% interest.

In response to Creditor's objection to confirmation, the standing chapter 13 trustee ("Trustee") objects to the 12% interest rate sought by Creditor. Instead, the Trustee argues in favor of applying a "*Till* interest rate" of prime plus a risk adjustment, found appropriate by the

2

United States Supreme Court for the long-term payout in installments of a secured claim in *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004). If applicable, that rate would more closely mirror the lower interest rate proposed in Debtor's plan. The Trustee further objects on the grounds that the City lacked the requisite authority to convey the tax lien to Creditor. Both of these arguments are addressed below.

## DISCUSSION

Creditor argues that it holds a "tax claim" within the meaning of Section 511 of the Bankruptcy Code. Section 511(a), in pertinent part, provides as follows:

> If any provision of this title requires the payment of interest on a tax claim . . . or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law.

11 U.S.C. § 511. This provision was adopted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Prior to its enactment, courts utilized a wide variety of approaches for determining the appropriate interest rate for tax liens. Adam D. Wolper, *Section 511 Antimodification: A Tax Lien Is A Tax Claim, but Is A "Tax Lien" A "Tax Lien"?*, AM. BANKR. INST. J., at 36 (June 2010). Some courts found that tax liens were strictly entitled to state law interest rates. See, e.g., *In re Greensboro Lumber Co.*, 183 B.R. 316 (Bankr. M.D. Ga. 1995). Other courts allowed for a case-by-case balancing of the equities, determining the rate based upon a fluid approach and the particular facts of a given case. See, e.g., *Wasserman v. City of Cambridge (In re Wasserman)*, 151 B.R. 4 (D.Mass. 1993). By implementing a uniform approach, Congress sought to simplify the interest rate calculation by mandating that all tax claims are entitled to their nonbankruptcy interest rates. H.R. Rep. No. 109-31 (2005).

Federal law determines what constitutes a "tax claim" within the meaning of the foregoing section, but the term is not defined in the Bankruptcy Code. Federal law often defers to state law in determining who is a creditor and who has a right to payment. *Travelers Cas. & Sur. Co. of America v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 451 (2007) ("[W]hen the Code uses the word 'claim'...[which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A)] it is usually referring to a right to payment recognized under state law..."). Since cases which address whether a given claim falls within the purview of Section 511 focus on interpreting particular provisions of the applicable state and municipal law, it is not surprising that as state statutes vary, so do the determinations reached by the courts. As a threshold matter, it is easy to conclude that "when a federal, state, or local governmental entity pursues a claim ... [for unpaid taxes,] the applicable interest rate is determined in accord with nonbankruptcy law." *In re Kizzee-Jordan*, 626 F.3d 239, 243 (5th Cir. 2010). Congress could have limited Section 511 to governments by simply using the term "governmental unit" in place of "creditor." *Id.*; *In re Davis*, 362 B.R. 651, 654 (Bankr. N.D.Tex. 2006); *Cortner* 400 B.R. at 613 n.11 (Bankr. S.D. Ohio 2009).[2] Congress specifically used that term in other provisions of the Bankruptcy Code when it specifically intended that it apply only to governmental bodies. See, e.g., Section 507(a)(1)(A). However, Section 511 utilizes the broad term "creditor."[3] From this language, the court finds that Congress intended that private parties and not just governmental entities may be found to hold a "tax claim" within the meaning of this section. *In re Cortner*, 400 B.R. 608, 613 (Bankr. S.D. Ohio 2009).

---

[2] The term "governmental unit" is defined in Section 101(27) to mean the United States government, states, municipalities, and foreign governments.

[3] "Creditor" is defined as an "entity that has a claim against the estate." Section 101(10). Under *Johnson v. Home State Bank (In re Johnson)*, 501 U.S. 78 (1991), the United States Supreme Court found that the term applies to an entity that is limited to *in rem* relief against property owned by a debtor.

4

## **STATUTORY SCHEME IN NEW YORK AND IN THE CITY OF SYRACUSE**

New York Real Property Tax Law ("NYRPTL") provides a uniform system for the collection of delinquent property taxes. N.Y. REAL PROP. TAX LAW §§ 1100-1194 (McKinney 2006). NYRPTL §§ 1190, 1192 and 1194 allow for the sale of delinquent tax liens to permit local governments a necessary source of revenue to fund their expenditures. *Id.* Under New York's (or "State") scheme, tax districts are allowed to sell tax liens to a state-created municipal bond bank agency. *Id.* at § 1190.

The State scheme, however, is not binding on localities that have "opted-out" under NYRPTL § 1104(2). A county, city, or town will not be bound by the State's procedures for enforcement and collection of delinquent taxes if it meets three criteria: (1) as of January 1, 1993, the locality had existing local laws which provided for the collection of delinquent real property taxes, (2) no later than July 1, 1994, the locality enacted a local law which stated that it wished to continue collecting delinquent property taxes pursuant to its existing laws, and (3) a copy of the new local law opting out of the state scheme was filed with the state board no later than August 1, 1994. *Id.* NYRPTL § 1104(2)(ii) further allows localities to follow their existing laws as "may from time to time be amended." *Id.*

The City timely opted out of the state scheme through Local Law No. 3 of 1994, which provided that the City would continue collecting real property taxes pursuant to Chapter 75 of the Local Laws of 1906 and its City Charter of 1960 "as amended and as such charter and special acts may be amended from time to time." Syracuse, N.Y., Local Law No. 3, § 4 (1994). It also provided for the filing of a copy of Local Law No. 3 with the state board by August 1, 1994. *Id.* § 5. As a result, the City is not limited to the state collection scheme. The City has further retained the right to amend its local collection laws under NYRPTL § 1104(2)(ii). The City

5

exercised this right in 1995, enacting its own provision for the sale of tax liens to private purchasers. Syracuse, N.Y., CODE Pt. S, Ch. 19, Art.2, § 19-48 (1995) ("City Code")[4]. It is pursuant to this authority that the City sold its right to the tax liens encumbering the Debtor's residence and its right of enforcement and collection of the underlying delinquent taxes to Creditor. This court finds that the City was validly authorized to do so and overrules the Trustee's objection that the City lacked the requisite authority to convey the tax liens to the Creditor.

The court next considers whether Creditor holds a "tax claim," entitling it to payment of 12% interest. Section 6-403(2), (8) of the City of Syracuse Charter provides for additional fees of 12% per annum after the sale ("after the date of the tax sale for said unpaid tax...[taxpayer] shall pay fees at the rate of twelve (12) percentum per year"). Section 19-48(10) of the City Code further provides that "the private entity...shall be authorized to foreclose the tax liens...and tax liens purchased by the private entity shall be subject to the same rate of interest as provided in the Act for tax liens held by the city," which is 12%. Syracuse, N.Y., CODE Pt. S, Ch. 19, Art. 2, § 19-48(10). Accordingly, it is clear that the nonbankruptcy rate is 12%.

In support of its objection, the Trustee relies upon a recent, unpublished bench decision in this District issued by my colleague, Judge Davis, in *In re Skinner*, Case No. 10-60798 (Bankr. N.D.N.Y. January 18, 2011) in which she rejected a similar position of Creditor as to property in the City of Amsterdam, Montgomery County as to which it held a tax lien.[5] As characterized by the Trustee, the *Skinner* decision was based upon the court finding that the rights of a tax sale certificate holder differ substantially from the rights of the municipality that originally held the tax claim. Subsequently, on a motion for reconsideration, the court modified two of the three

---

[4] Article II of Chapter 19 of the City Code is the codified version of the Syracuse Tax and Assessment Act of 1906.
[5] The decision involved a consolidation of three cases, *In re Rick E. Skinner*, with *In re Barbara Saita*, Case No. 07-62404 and *In re Ann Marie Duffy*, Case No. 10-61918, collectively referenced as *Skinner*.

underpinnings of its original findings that there was a substantial modification of rights upon transfer from the municipality to a third party[6] but denied reconsideration on the basis that a particular Session Law was not before the court for its consideration on the original return date of the motion. *In re Skinner*, 2011 Bankr. LEXIS 2035 (Bankr. N.D.N.Y. May 24, 2011). It is telling, however, that the court went on to state: "Had [the Session Law] been submitted and considered in the first instance, the Court likely would have rendered a different decision after a complete analysis similar to that undertaken by the handful of courts that have addressed the rights of purchasers of tax sale certificates after BAPCPA's enactment of §511." *Id.*, at *15.

The one remaining difference as noted in *Skinner* between the rights of a holder of a tax sale certificate and the municipality holding the original tax claim is that under the New York State scheme, a tax lien purchaser who wishes to foreclose must utilize the judicial foreclosure process available to all other lien holders pursuant to NYRPTL §1301-1391 and may not resort to the *in rem* tax foreclosure procedures available only to governmental entities under NYRPTL § 1120. This distinction remains for those who purchase tax liens from the City whose remedy is limited to the judicial foreclosure process. Syracuse, N.Y., CODE Pt. S, Ch. 19, Art. 2, § 19-48(10). In contrast, when the City holds a tax lien, it has the option of pursuing a judicial foreclosure or, alternatively, utilizing a specific summary proceeding of statutory foreclosure that requires no state court involvement. Syracuse, N.Y., Code Pt. S, Ch. 19, Art. 2, §19-51.1 Due to the summary nature of statutory foreclosure that requires strict adherence to the specified procedures in order to comport with due process and protect the rights of real property owners, it is understandable that the City chose not to make it available to private parties who purchase tax

---

[6] The court subsequently revised its earlier finding regarding a requirement of recording and noted that a tax lien purchaser *may* rather than *must* record its tax lien. The court also recognized that the tax lien maintains its priority position as to prior liens of record, only subordinating as to subsequent liens arising from more recent taxes that become delinquent, a scheme identical to when the tax lien is held by the municipality. *In re Skinner*, 2011 Bankr. LEXIS 2035 (Bankr. N.D.N.Y. May 24, 2011).

liens.[7] The fact that the City opted to limit the methods for enforcement of a tax lien available to a tax lien purchaser does not, in this court's opinion, alter the underlying claim secured by the lien. The Purchase and Sale Agreement makes clear that the City is transferring to the purchaser the specific tax liens defined as "those real property tax liens against related properties securing the delinquent tax due and unpaid taxes levied upon each property." Article I, Purchase and Sale Agreement. Under the Syracuse Tax and Assessment Act (City of Syracuse Code § 19-26 et seq.), the underlying tax obligation is not paid off at the time of the sale and assignment of the lien. Upon closing the Purchase and Sale Agreement, the purchaser of the tax lien has the sole right to collect the delinquent taxes and, if any of the delinquent taxes are inadvertently paid to the City, the City is required to remit them to purchaser. Article XI, Purchase and Sale Agreement. The purchaser also acquires all collection rights including the right to pursue foreclosure of the tax lien. *Id.*

This case is readily distinguishable from *In re Princeton Office Park, L.P*, 423 B.R. 795, 804 (Bankr. D.N.J. 2010), in which the court found that the entity acquiring a tax sale certificate did not qualify as the holder of a tax claim. In interpreting pertinent provisions of New Jersey law, the court found that the outstanding taxes were satisfied upon payment of the sum for the tax sale certificate and the purchaser of the tax sale certificate acquired a completely new debt secured by a statutory lien against the real estate. *Id.* A further significant difference under the New Jersey statutory scheme is that the real property owner can redeem the tax sale certificate by payment of the amount paid for the tax sale certificate and *not* the amount of the prior, delinquent taxes. *Id.*; *accord, In re Burch*, 10-11360-JHW, 2010 WL 2889520 (Bankr. D.N.J. July 15, 2010).

---

[7] General state law applicable to those municipalities that did not opt out of NYRPTL Article 11 similarly limits enforcement remedies of a purchaser of a tax lien to the judicial foreclosure process. See NYRPTL § 1194.

## **CONCLUSION**

Based upon the foregoing analysis of relevant New York and Syracuse statutory provisions, the court concludes that Creditor holds a tax claim under Section 511 and is entitled to receive 12% interest on its secured claim under applicable nonbankruptcy law. Accordingly, Creditor's objection to confirmation is sustained.

SO ORDERED.

Dated: June 27, 2011
Syracuse, New York

Margaret Cangilos-Ruiz
U.S. Bankruptcy Judge